No. 55,819

STATE OF KANSAS, *Petitioner,* v. CHARLES A. CHARTIER, *Respondent.*

(676 P.2d 738)

Opinion filed February 8, 1984.

*Roger N. Walter,* disciplinary counsel, argued the cause for petitioner.

*Charles A. Chartier,* argued the cause pro se and was on the brief for the respondent.

*Per Curiam:* This is a disciplinary proceeding against Charles A. Chartier, a Kansas attorney. There are two separate complaints against respondent presently before this court. The other case is *State v. Charles Chartier,* No. 55,820, filed this date.

Formal complaints in both cases were filed February 16, 1983. After hearings were held on the matter the hearing panel unanimously recommended the respondent be suspended from the practice of law by this court pursuant to Rule 203(a)(2) (230 Kan. xcix) for violations of DR 6-101(A)(3) (230 Kan. cxxii), DR 9-102(A) (230 Kan. cxxvii), and DR 9-102(B)(4) (230 Kan. cxxvii).

The respondent filed exceptions to the hearing panel reports.

The hearing panel made the following findings of fact:

1. The respondent, Charles A. Chartier, is an attorney-at-law. His last registration address with the clerk of the appellate courts of Kansas is 726 ½ North Washington, P.O. Box 477, Junction City, Kansas 66441.

2. Respondent represented Dale and Patricia Buchenau in connection with the sale of their mobile home to William and Mary Biggs. Respondent had represented the Buchenau family for approximately twenty-one years and was considered by them to be their family lawyer.

3. Respondent prepared a contract dated May 8, 1981, for the sale of the mobile home. The purchase price was $1600 and was paid $1000 cash upon the execution of the contract and delivery of possession of the mobile home on May 8, 1981. The balance of $600 was paid to respondent to hold in escrow until the Buchenaus could deliver a certificate of title to the Biggs.

4. The sum of $600, representing the balance of the purchase

price of the mobile home, was paid to respondent in accordance with the contract of sale. Respondent deposited that amount in his general account. Other funds belonging to respondent were deposited in that account, also.

5. In addition to preparation of the contract for sale of the Buchenaus' mobile home, respondent agreed to obtain a certificate of title for the mobile home. The original certificate of title was lost. Respondent failed and neglected to either secure the certificate of title for the mobile home or withdraw from his employment to do so.

6. Respondent failed and neglected to respond to telephone calls from Ms. Buchenau. The only way in which Ms. Buchenau could communicate with respondent was by making a special trip to respondent's office and waiting there until he entered the office.

7. After the death of Mr. Buchenau in February, 1982, Ms. Buchenau requested return of her file. Respondent failed and neglected to promptly return Ms. Buchenau's file to her.

8. The Biggs, the purchasers of the mobile home, eventually procured a certificate of title to the mobile home in the fall of 1982. Thereafter, both Ms. Biggs and Ms. Buchenau made demands on respondent for payment of the escrow funds. Due to conflicting claims against the escrow funds, respondent was justified in refusing to pay the entire amount to Ms. Buchenau, but respondent failed and neglected to make any attempt to resolve the conflict.

9. Ms. Buchenau was required to retain the services of another attorney in order to finally resolve the matter of the payment of the escrow funds. Eventually, $85 was paid to the Biggs to reimburse them for their expenses in obtaining a duplicate certificate of title to the mobile home and the balance of the escrow funds in the amount of $515 was paid to Ms. Buchenau.

Respondent alleges he tried numerous methods to obtain the certificate of title to the mobile home but all failed. He advised Ms. Buchenau in late 1981 that unless the certificate of title could be located, a quiet title action would have to be taken in the district court, which would cost $250 to $350. Ms. Buchenau allegedly told respondent not to file the action since she did not want to pay the $250 to $350.

As for the $600 left in escrow with the respondent, Chartier

contends Ms. Buchenau authorized him to deduct $250 from the amount to pay her son's legal fees for services rendered by respondent. However, respondent also states he did not make the deduction since he knew Ms. Buchenau needed the money.

Respondent indicates he returned Ms. Buchenau's file to her September 2, 1982. The panel made the following conclusions:

1. DR 9-102(A) requires that all funds of a client shall be deposited in one or more identifiable bank accounts and that no funds belonging to the lawyer shall be deposited therein. The balance of the purchase price for the mobile home in the amount of $600 was deposited in respondent's general account. Other funds belonging to respondent were deposited in that account, also. The escrow funds should have been deposited in a trust account. The deposit of the escrow funds in respondent's general account constitutes a violation of DR 9-102(A).

2. Respondent's failure to return Ms. Buchenau's file to her upon request following the death of her husband in February 1982, constitutes a violation of DR 9-102(B)(4). That rule requires that a lawyer promptly deliver to his client properties in the possession of the lawyer which the client is entitled to receive. Clearly, Ms. Buchenau was entitled to her file. She should not have been required to camp out at respondent's office to obtain it.

3. Respondent was employed to procure a certificate of title to the mobile home sold by the Buchenaus to the Biggs and accepted that assignment. Respondent neglected to obtain the certificate of title. Additionally, respondent persistently refused to communicate with his client concerning his assignment. The panel is persuaded that such conduct constitutes a violation of DR 6-101(A)(3).

Respondent argues the State failed to prove clearly and convincingly he violated his professional responsibilities. It has been stated that: "A disciplinary action is more serious than a civil action and the charges must be established by substantial, clear, convincing and satisfactory evidence." *State v. Freeman,* 229 Kan. 639, 644, 629 P.2d 716 (1981).

Respondent cites *State v. Dixon,* 233 Kan. 465, 664 P.2d 286 (1983), for support of his argument that a mere error in judgment is not sufficient evidence for disciplinary action. The instant case does not involve a mere error in judgment. Despite respondent's

factual allegations there is still more than enough clear and convincing evidence to support the panel's findings.

Respondent also argues the recommended discipline is more serious than is justified. This court has the authority to reject the panel's recommended discipline. *State v. Alvey,* 215 Kan. 460, 524 P.2d 747 (1974). The court has the duty to examine the evidence and determine the judgment to be entered. *State v. Leon,* 229 Kan. 178, 180-81, 621 P.2d 1016 (1981).

This court has held in other disciplinary actions that it "takes a dim view of an attorney who commingles a client's money with his or her own and, on occasion, that action has resulted in the imposition of harsh penalties." *State v. Freeman,* 229 Kan. at 644, and cases cited therein.

Respondent's other violations, including failing to give Ms. Buchenau her file until many months after she had requested it and failing to obtain the title to the mobile home after promising to do so, also indicate substantial violations. The lost title was finally obtained by Ms. Buchenau from the motor vehicle department without excessive expense.

While these violations of the disciplinary rules taken alone might not require this court to impose the penalties recommended by the hearing panel, when previous ethical violations and the other case presently before us are considered, we ratify the action taken in *State v. Chartier,* No. 55,820, handed down this date, and order Charles A. Chartier be indefinitely suspended from the practice of law.

This suspension becomes effective when this opinion is filed with the clerk of the Supreme Court.